1

2

3

4                          UNITED STATES DISTRICT COURT
                               DISTRICT OF NEVADA
5                              RENO, NEVADA

6
    WAYNE SZYMBORSKI, On Behalf of      )    3:10-CV-00132-ECR-RAM
7   Himself and All Others Similarly    )
    Situated,                           )
8                                       )
              Plaintiff,                )    Order
9                                       )
    vs.                                 )
10                                      )
    ORMAT TECHNOLOGIES, INC., YEHUDIT   )
11  BRONICKI, JOSEPH TENNE,             )
                                        )
12            Defendants.               )
                                        )
13  _____)    3:10-CV-00156-ECR-RAM
                                        )
    PAUL STEBELTON, On Behalf of        )
14  Himself and All Others Similarly    )
    Situated,                           )
15                                      )
              Plaintiff,                )
16                                      )
    vs.                                 )
17                                      )
    ORMAT TECHNOLOGIES, INC., JOSEPH    )
18  TENNE, YEHUDI BRONICKI, YORAM       )
    BRONICKI, LUCIEN Y. BRONICKI, DAN   )
19  FALK, JACOB J. WORENKLEIN, ROGER    )
    W. GALE, ROBERT F. CLARKE,          )
20                                      )
              Defendants.               )
21  _____)
                                        )    3:10-CV-00198-ECR-RAM
22  JOHN J. CURTIS, On Behalf of        )
    Himself and All Others Similarly    )
23  Situated,                           )
                                        )
24            Plaintiff,                )
                                        )
25  vs.                                 )
                                        )
26  ORMAT TECHNOLOGIES, INC., JOSEPH    )
    TENNE, YEHUDI BRONICKI,             )
27                                      )
              Defendants.               )
28  _____)

1   This case is a class action suit against Ormat Technologies,

2 Inc. ("Ormat") and individual officers of Ormat ("individual

3 Defendants") for violations of federal securities laws.

4   On August 13, 2010, Defendants filed a motion to dismiss (#43)

5 the consolidated amended class complaint (#35).  On September 27,

6 2010, Plaintiffs opposed (#50).  On November 3, 2010, Defendants

7 replied (#53).

8   The motion is ripe, and we now rule on it.

9

10                        **I. Background**

11   In March and April 2010, three lawsuits were filed alleging

12 violations of federal securities laws against Ormat and individual

13 officers of Ormat.  On June 3, 2010, the Court consolidated (#27)

14 the actions and appointed Plaintiffs Jianxun Dong, George Umino, and

15 the A.R.D. Investment Club, L.P. (the "Lead Plaintiffs") lead

16 plaintiffs.

17   Ormat is a Delaware corporation engaged in the geothermal and

18 recovered energy power business.  (Am. Class Compl. ¶¶ 2, 17 (#35).)

19 Plaintiffs are purchasers (the "Class") of Ormat's securities

20 between May 7, 2008 and February 24, 2010, inclusive (the "Class

21 Period").  (_Id._ ¶ 1.)

22   Plaintiffs base their complaint on two separate incidents in

23 which Defendants allegedly misled stockholders and purchasers.  The

24 first incident concerns Ormat's February 24, 2010 disclosure that

25 Ormat's financial statements for 2008 required restatement.  The

26 second incident concerns Ormat's projections regarding the timely

27 completion and expected capacity of the North Brawley plant.

28                              2

1    Ormat, as part of its geothermal and recovered energy power
2 business, explores, identifies, develops, and operates new
3 geothermal projects.  (<u>Id.</u> ¶¶ 17-18.)  In 2007, Ormat discussed
4 geothermal projects at Grass Valley, Buffalo Valley, and Rock Hills
5 in its public disclosures.  (<u>Id.</u> ¶¶ 21, 23.)  Both projects were
6 located in Lander County, Nevada.  (<u>Id.</u>)  Ormat also disclosed other
7 exploration sites in Nevada.  (<u>Id.</u> ¶ 23.)
8    In its 2007 Form 10-K, Ormat informed investors that costs
9 incurred in connection with the exploration and development of
10 geothermal resources would be capitalized on an "area-of-interest"
11 basis.  (<u>Id.</u> ¶ 33.)  It also represented that when an area of
12 interest is abandoned, capitalized exploration costs would be
13 expensed.  (<u>Id.</u>)  Ormat also stated that "[t]o date, we have not
14 abandoned any exploration projects."  (<u>Id.</u>)  In its 2008 Form 10-K,
15 Ormat repeated its disclosures regarding costs of exploration, but
16 removed the sentence stating that exploration projects had not been
17 abandoned.  (<u>Id.</u> ¶ 34.)  The Buffalo Valley, Grass Valley, and Rock
18 Hills Projects were abandoned in 2008, but the costs were
19 capitalized rather than expensed.  (<u>Id.</u> ¶ 57.)  On February 24,
20 2009, Ormat issued a press release titled "Ormat Technologies
21 Reports Record Fourth Quarter 2008 and Year-End results" reporting
22 increases in net income and earnings per share.  (<u>Id.</u> ¶ 66.)
23    On September 14, 2009, the Securities and Exchange Commission
24 ("SEC") sent Ormat a letter questioning, *inter alia*, Ormat's method
25 of capitalizing costs on an area of interest basis. (<u>Id.</u> ¶ 54.)  In
26 a series of emails, Ormat explained that "[t]here are no geothermal-
27 specific industry accounting standards or guidance" and that it
28

3

adopted the full-cost method used in the oil and gas industry described in Rule 4-10 of Regulation S-X, Financial Accounting and Reporting for Oil and Gas Producing Activities Pursuant to the Federal Securities Laws and the Energy Policy and Conservation Act of 1979 and Statement of Financial Accounting Standards ("SFAS") No. 19 rather than the successful-efforts method.  (Id. ¶¶ 55-56, 59.) Ormat was asked to clarify if an area of interest is the level at which projects were tested for impairment, which the SEC noted "could result in the poor performance of certain exploration projects being masked by the strong performance of other exploration projects within the same area of interest . . . [which would be] important information for your management to know."  (Id. ¶ 58.) Ormat responded by stating that it treats Nevada as a single cost center, as used by companies following the full cost method, and Nevada is further divided into three areas of interest.  (Id. ¶ 59.) Ormat explained that it defines an area of interest "based on the geographical proximity of the geothermal resources and their proximity to the same electricity grid, the use of, in certain cases, a common transmission line . . . " to "reflect the manner in which [Ormat] intend[s] to operate [its] power plant facilities." (Id.)

     On February 11, 2010, the SEC wrote that it "[did] not believe it is appropriate to analogize to full cost accounting."  (Id. ¶ 62.)  The SEC noted that "ASC 932 (formerly SFAS 19) and Rule 4-10 of Regulation S-X specifically exclude geothermal activities from their scope."  (Id.)  Ormat was asked to restate its financial statements to write off all abandoned projects and to reflect the

4

expense in the period in which the project was abandoned, "consistent with the guidance in ASC 360-10-35." (Id.)  The SEC also requested that Ormat expand its disclosures concerning its exploration and development projects, including discussions of projects that were abandoned during each period. (Id.)  Ormat was also asked to discuss its capitalization of costs. (Id.)  Ormat agreed to restate its financial statements, to expense costs for abandoned projects, and to clarify its disclosures to investors. (Id. ¶ 63.)

During a conference call with investors on February 24, 2010, Ormat stated that it would now use the successful efforts method. (Id. ¶ 65.)  On the same day, Ormat also issued a press release titled "Ormat Technologies Reports Record 2009 Year End and Fourth Quarter Results." (Id. ¶ 84.)  Ormat stated in the press release that through the third quarter of 2009, Ormat accounted for exploration and development costs using a full cost accounting method under which it capitalized costs incurred for exploration and development on an area of interest basis. (Id.)  Ormat further stated that following a review performed by the SEC, it concluded that its accounting method was in error, and restatement would be necessary.  The effect of the restatement on the 2008 financial statements was that net income decreased by $6.2 million. (Id.)

Following the disclosures made on February 24, 2010, Ormat's shares declined $1.28 per share, nearly 4%, on February 24, 2010, and futher declined an additional $0.89 per share, nearly 3%, on February 25, 2010, and declined another $2.08 per share on February 26, 2010. (Id. ¶ 86.)

1    Plaintiffs allege that the financial disclosures made before
2 February 24, 2010, were knowingly or recklessly misleading because
3 using the full cost method was improper and a violation of generally
4 accepted accounting principles ("GAAP"), and because the accounting
5 policy as disclosed to investors was unclear or purposefully
6 erroneous as to the actual accounting method that was used.  (Id. ¶¶
7 71, 73, 76, 79, 83.)

8    Plaintiffs further allege that a strong inference of scienter
9 arises from the fact that Ormat is a family-owned corporation that
10 was defending against a hostile takeover attempt by Gazit, Inc., and
11 because the individual Defendants needed high dividends in order to
12 pay off a $157 million loan made to purchase additional Ormat shares
13 in order to defend against the hostile takeover attempt.  (Id. ¶¶
14 102-103, 105-106.)

15    The second incident Plaintiffs rely on to support their claims
16 are Defendants' disclosures concerning Ormat's North Brawley plant.
17 (Id. ¶ 120.)  Ormat began exploration activities in North Brawley,
18 California in Imperial County in 2006.  (Id.)  In a press release on
19 December 21, 2006, Ormat announced that "[d]evelopment of the North
20 Brawley geothermal project is expected to be completed in 50-MW
21 clusters over a three to five years period, with the first 50 MW
22 coming online by the end of 2008 at the earliest."  (Id. ¶ 121.)

23    Ormat continued to make statements that the North Brawley plant
24 was on track to be completed by the end of 2008.  (Id. ¶ 123.)  Due
25 to problems with sand and injection interference issues, however,
26 the North Brawley plant was not put into service until February
27 2010, at a capacity of 17 MW.  (Id. ¶ 143.)

28
6

1    Before Ormat developed the North Brawley plant, Southern
2 California Edison constructed a 10MW experimental plant at North
3 Brawley in 1980.  (Id. ¶ 134.)  The plant was decommissioned in 1986
4 due to corrosion, reservoir uncertainties, and complications with
5 the high salinity brines.  (Id.)  Plaintiffs allege that Ormat did
6 not disclose Southern California Edison's failure with the North
7 Brawley plant, and that Ormat developed the North Brawley plant on
8 what it later confessed to be a "very aggressive completion
9 schedule" in order to receive a tax subsidy which could only be
10 claimed on the electricity output of new geothermal power plants put
11 into service by December 31, 2008.  (Id. ¶¶ 129, 139.)  Plaintiffs
12 also present a confidential witness statement to support its claims
13 that Defendants knew that their statements concerning the status of
14 the North Brawley plant were false.  (Id. ¶¶ 138-39.)

15    Plaintiffs claim that during the Class Period, Plaintiffs and
16 the Class "purchased Ormat's securities at artificially inflated
17 prices as a result of the materially false and misleading statements
18 alleged" in the complaint, and that as a result, Plaintiffs and the
19 Class incurred damages.  (Id. ¶ 189.)

20

21              **II. Motion to Dismiss Standard**

22    Plaintiffs' claims are brought under Sections 10(b) and 20(a)
23 of the Exchange Act, as well as under Rule 10b-5 of the Rules and
24 Regulations of the Exchange Act, 17 C.F.R. § 240.10b-5.  Therefore,
25 the claims are subject to the heightened pleading standards of
26 Federal Rule of Civil Procedure 9(b) and the Private Securities
27 Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b).

28                              7

1  Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging
2  fraud or mistake, a party must state with particularity the
3  circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).
4  The PSLRA also provides that "a complaint shall specify each
5  statement alleged to have been misleading, the reason or reasons why
6  the statement is misleading" and should also state "with
7  particularity all facts" on which any allegation rests, including
8  any allegations regarding scienter.  15 U.S.C. § 78u-4(b).  The
9  court must dismiss complaints that do not meet these requirements.
10 15 U.S.C. § 78u-4(b)(3).

11     The United States Supreme Court recently clarified the standard
12 by which a court must consider a Rule 12(b)(6) motion to dismiss a
13 Section 10(b) action.  Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
14 551 U.S. 308, 322 (2007).  First, a court must accept all factual
15 allegations in the complaint as true.  Id.  Second, a court must
16 also consider the complaint in its entirety, as well as other
17 sources such as "documents incorporated into the complaint by
18 reference, and matters of which a court may take judicial notice."
19 Id.  Third, in determining whether a plaintiff has sufficiently pled
20 scienter, a court "must take into account plausible opposing
21 inferences."  Id.

22

23                         **III. Analysis**

24     "Five elements are required in order to prove a primary
25 violation of Rule 10b-5. In particular, a plaintiff must demonstrate
26 '(1) a material misrepresentation or omission of fact, (2) scienter,
27 (3) a connection with the purchase or sale of a security, (4)

28                                8

transaction and loss causation, and (5) economic loss.'" <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 990 (9th Cir. 2009) (quoting <u>In re Dao Systems, Inc.</u>, 411 F.3d 1006, 1014 (9th Cir. 2005)).  Defendants seek to dismiss Plaintiffs' claims in their entirety pursuant to the PSLRA and Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to plead, with the requisite particularity, material misrepresentation, scienter, and loss causation.

Plaintiffs' claims rest on two separate allegedly misleading disclosures made by Defendants during the Class Period.  We will consider the allegations relating to each incident separately.

A. Ormat's 2008 Restatement

Plaintiffs claim that Ormat's choice of the full cost accounting method was not only improper, but also misleading because it resulted in overstated financial results.  Plaintiffs also claim that Defendants' disclosures regarding the actual accounting method used were misleading and vague, and gave investors the impression that costs would be expensed when a project was abandoned.[1]

Plaintiffs also plead, as they must, that Defendants acted with the requisite intentional or reckless scienter in making the allegedly misleading disclosures.  Plaintiffs base their allegation of scienter on Defendants' need to defend the company against a hostile takeover.  Plaintiffs' theory is that Defendants required

---

[1] Defendants assert that Plaintiffs did not make this claim in their complaint, and improperly tried to add it in their opposition to Defendants' motion to dismiss.  We disagree.  In the complaint, Plaintiffs state that Defendants' method of capitalizing expenses for abandoned projects "was not in compliance with its accounting policy as disclosed to investors."  (Am. Class. Compl. ¶ 94 (#35).)

1 significant dividends in order to reduce the balance of the $157
2 million loan taken to aid in Defendants' efforts to defend against
3 the takeover.  Under that theory, Defendants would have been under
4 pressure to create profits under which a large dividend would not
5 look suspicious, as Defendants were not in a position to sell Ormat
6 shares to repay the loan due to the looming pressure of the hostile
7 takeover.

8      Plaintiffs have pled, with sufficient particularity,
9 allegations to support a claim based on the allegedly deceptive and
10 improper accounting method used to account for costs incurred in
11 exploration.  The allegedly misleading statements are identified,
12 along with reasons explaining why each statement is misleading.  The
13 allegations relating to scienter are likewise sufficient.  Taken as
14 a whole, and individually, Plaintiffs' claim that Defendants had a
15 particular motive to mislead investors is at least as plausible as
16 any opposing inference of innocence.  While Defendants argued that
17 their choice of the full cost accounting method was not plainly
18 erroneous in light of the lack of an industry standard, and similar
19 practices by other geothermal companies, Defendants fail to respond
20 to Plaintiffs' claim, supported by the SEC's own comments in their
21 letters to Ormat, that the full cost accounting method is
22 specifically excluded as an appropriate accounting method for
23 geothermal companies.  Therefore, the scale tips in favor of an
24 inference that Ormat or the individual Defendants intentionally or
25 recklessly chose the allegedly improper full cost accounting method
26 to bolster Ormat's year-end profit reports for improper reasons.
27
28                                  10

1          B. Timeliness and Output of the North Brawley Plant

2          Plaintiffs' allegations regarding Ormat's statements about the

3    North Brawley plant, however, do not pass muster under the

4    heightened pleading standard in the PSLRA.  Under the PSLRA,

5    "forward-looking statements" are protected by a safe harbor under

6    certain circumstances.  The PSLRA provides that a person shall not

7    be liable with respect to any forward-looking statement, written or

8    oral, if the statement is "(i) identified as a forward-looking

9    statement, and is accompanied by meaningful cautionary statements

10   identifying important factors that could cause actual results to

11   differ materially from those in the forward-looking statement." 15

12   U.S.C. § 78u-5(c).  The PSLRA also protects forward-looking

13   statements if a plaintiff fails to prove that the statement was made

14   with actual knowledge that the statement was false or misleading, or

15   if made by or with the approval of an executive officer of a

16   business entity.  Id.

17        The PSLRA defines forward-looking statements to mean, *inter*

18   *alia*, statements of the plans and objectives of management for

19   future operations.  Ormat's statements that the North Brawley plant

20   was scheduled for completion at the end of 2008 with an output of

21   50MW falls squarely under the definition of forward-looking

22   statements protected under the PSLRA's safe harbor, and were

23   identified as such due to the use of language such as "we expect"

24   and "subject to change at any time and which may not be met in its

25   entirety."  Those statements are, therefore, protected under the

26   safe harbor as long as they were accompanied by "meaningful

27   cautionary statements identifying important factors that could cause

28                                    11

1   actual results to differ materially from those in the

2   forward-looking statement[s]." 15 U.S.C. § 78u-5(c).  A company's

3   "[f]ailure to include the particular factor that ultimately causes

4   the forward-looking statement not to come true will not mean that

5   the statement is not protected by the safe harbor."  1995

6   U.S.C.C.A.N. 679, 743.  Plaintiffs allege that Ormat's projections

7   concerning completion date and capacity were false because of

8   problems with sand in the geothermal reservoir and interference

9   between injection wells.  Ormat accompanied its forward-looking

10  statements with cautionary language that warned of exactly such

11  risks.  For example, Ormat warned its stockholders that its

12  development schedule is "subject to change at any time and which may

13  not be met in its entirety" due to risks such as geothermal energy

14  projects "suffer[ing] an unexpected decline in the capacity of their

15  respective geothermal wells" as well as other operational risks

16  "relating to the extraction of geothermal fluids." (2008 Form 10-K,

17  Exhibit 3, Motion to Dismiss, at 3-4. 44-61, 69-72 (#45-1).)  Ormat

18  further warned that completion of the project is subject to risks

19  such as "shortages and inconsistent qualities of equipment, material

20  and labor; and adverse environmental and geological conditions . . .

21  which could give rise to delays, cost overruns . . . ." (Id.)

22       The statute itself protects forward-looking statements as long

23  as the requirement of cautionary language is met.  15 U.S.C. §78u-

24  b(5).  The second prong of the safe harbor, the requirement of

25  actual knowledge of falsity is independent.  See id. (safe harbor

26  protects forward looking statements accompanied by meaningful

27  cautionary language, or when plaintiff fails to prove actual

28                                        12

1   knowledge of falsity).  Because we rule that the forward-looking
2   statements were accompanied by meaningful cautionary language, we do
3   not examine the argument that the statements are protected under the
4   second prong of actual knowledge.[2]

5        Plaintiffs, however, argue that many of Ormat's statements
6   regarding the North Brawley plant were statements of current
7   business conditions rather than future projections.  Plaintiffs
8   claim that Ormat's statements were equivalent to statements that a
9   company is "on track" to meet its goals.  The authority on whether
10  statements that a company is "on track" are forward-looking
11  statements is split, with no binding precedent on this Court.  There
12  are decisions favorable to Plaintiffs' position that "on track"
13  statements are not forward-looking statements.  See, e.g., In re
14  Secure Computing Corp. Securities Litig., 120 F.Supp. 2d 810, 818
15  (N.D. Cal. 2000).  The Court of Appeals for the Third Circuit
16  disagrees.  The Third Circuit held that statements that the company
17  is "on track" and that its first quarter results "position [it]" to
18  meet its goals "cannot meaningfully be distinguished from the future
19  projection of which they are a part."  Institutional Investors Group
20  v. Avaya, Inc., 564 F.3d 242, 255 (3d Cir. 2009).

21
22       [2] Some courts disagree.  See, e.g., In re SeeBeyond Tech. Corp.
    Sec. Litig., 266 F.Supp. 2d 1150, 1164 (C.D. Cal. 2003) (holding that
23  knowledge of actual falsity will negate any safe harbor protection).
    The majority of courts, however, hold that the two prongs of the safe
24  harbor are independent.  See, e.g., Harris v. Ivax Corp., 182 F.3d
    799, 803 (11th Cir. 1999) (noting that "if a statement is accompanied
25  by 'meaningful cautionary language,' the defendants' state of mind is
    irrelevant.").  The majority reading of the statute is consistent with
26  the legislative history.  See H.R. Conf. Rep. 104-369, at 44 (1995),
    reprinted in 1995 U.S.C.C.A.N. 730, 743 ("[t]he first prong of the
27  safe harbor requires courts to examine only the cautionary statement
    accompanying the forward-looking statement.")

28                                 13

1    While Plaintiffs and Defendants strenuously advocate their

2  respective positions, our scrutiny of the complaint leads to the

3  conclusion that the issue being argued does not actually exist in

4  this case.  Ormat did not, at any time, state expressly that it

5  was "on track" to meet its goal of completion by 2008.  Rather, the

6  challenged statements are statements such as "construction work is

7  at an advanced stage" and "[d]rilling started in February 2007."  On

8  November 6, 2008, Defendant Yehudit Bronicki also stated that "the

9  50 megawatt North Brawley Project is in final stages of

10  construction" and that "[w]e expect to complete these activities by

11  the end of 2008."  Other than the last statement about expecting to

12  complete the plant by 2008, these statements are not equivalent to a

13  general statement that a project is on time, and are not protected

14  as forward-looking statements because they are statements of current

15  fact.  Plaintiffs argue that these statements were misleading

16  because Ormat failed to disclose that construction was not on

17  schedule due to issues with sand and having to re-drill wells.

18  Plaintiffs also argue that Ormat failed to disclose the problems

19  other companies faced trying to develop the North Brawley plant

20  decades earlier.  In fact, Ormat made no further statements about

21  the North Brawley plant after its November 2008 disclosures until

22  February 25, 2009, when Ormat disclosed the existence of sand issues

23  that caused the initial delay.  On that day, Defendant Yehudit

24  Bronicki stated that "[w]e also substantially completed the

25  construction of the 50 megawatts north Brawley and expect a gradual

26  ramp up of the project with full capacity in the second quarter of

27  2009."  Defendant Bronicki also stated that the slow ramp up is due

28

1 to unexpectedly large quantities of sand within the geothermal
2 reservoir.

3     Plaintiffs present three sources of evidence to support their
4 allegation that Ormat's statements about the status of the North
5 Brawley plant were intentionally or recklessly misleading or false.
6 The three sources of evidence are Southern California Edison's
7 experimental North Brawley plant built in 1980, a confidential
8 witness statement, and Ormat's own statements made during an April
9 9, 2010 presentation.  We will consider each of these separately.
10     Plaintiffs allege that Southern California Edison's ("SCE")
11 experimental plant constructed in 1980 supports their allegations
12 against Ormat because Ormat did not disclose the failure of SCE's
13 plant, and because Ormat should have known, due to SCE's experience,
14 that the North Brawley plant was subject to many risks and therefore
15 would be difficult to complete on schedule with an output of 50 MW.
16 We disagree.  While SCE did face problems that resulted in
17 decommissioning the experimental plant in 1986, Ormat points out
18 that technology has advanced since the 1980s, and SCE itself signed
19 a contract to purchase power from the North Brawley plant, thereby
20 supporting the inference that SCE did not think that its prior
21 experience necessarily meant Ormat would face insurmountable
22 problems in delivering on its promise to complete the North Brawley
23 plant by 2008.  Nor was Ormat's failure to disclose SCE's prior
24 experiments on the same general location indicative of scienter to
25 mislead its investors.  Companies are under no obligation to
26 disclose information already in the public domain.  See Whirlpool
27 Financial Corp. V. GN Holdings, Inc., 67 F.3d 605, 609 (7th Cir.

28                             15

1 1995).  Plaintiffs stated in the class complaint that "[b]ased on
2 public records of Ormat leases and well sites in North Brawley"
3 Plaintiffs believe that Ormat's North Brawley plant is located close
4 to the abandoned SCE plant site.  Plaintiffs do not allege, at any
5 time, that the information concerning North Brawley was not readily
6 available to them, and do not cite where they obtained their
7 information about the site.  Nor did they have any response in their
8 opposition to Defendants' motion to dismiss.  Therefore, we conclude
9 that the information regarding SCE is in the public domain, and
10 Ormat's failure to specifically disclose that information cannot
11 give rise to a fraud claim for failure to disclose.

12      We will consider Ormat's own statements following the delays
13 before considering the confidential witness statements.  On March 2,
14 2009, Ormat provided more details on the North Brawley plant in its
15 2008 Form 10-K.  Ormat stated that "[c]onstruction of the project
16 was substantially completed in December 2008.  During the start-up
17 testing we have encountered larger quantities of sand in the
18 geothermal reservoir than initially expected, which required
19 modification of the power plant."  Ormat's statements do not strike
20 us as a *mea culpa*.  Ormat candidly explained that "[the sand
21 problem] is not something surprised us [sic] and originally we
22 installed sand separators which were suppose [sic] to take care of
23 this problem . . . ."  Ormat stated then, as it reiterates now
24 through its motion to dismiss, that it was expecting issues with the
25 sand that it thought would be adequately remedied, and the
26 difficulty in solving the problems did not become apparent until
27 after final construction when it attempted to start up the plant in

28                                16

1  December 2008.  Ormat's statements, therefore, do not support an
2  inference that Ormat deliberately or recklessly misled its investors
3  regarding the risks surrounding its projected 2008 completion date
4  for the North Brawley plant.[3]

5      The third source of evidence Plaintiffs present is that of a
6  confidential witness.  A complaint relying on statements from a
7  confidential witness must pass two hurdles to satisfy the heightened
8  pleading requirements of PSLRA.  Digimarc, 552 F.3d at 995.  First,
9  the confidential witness "must be described with sufficient
10  particularity to establish [his] reliability and personal
11  knowledge," and the statements by a confidential witness "must
12  [himself] be indicative of scienter."  Id.  The first prong is only
13  required if there is no additional evidence providing an adequate
14  basis for believing that the defendants' statements were false.  Id.
15  In this case, we ruled that the other sources of evidence provided
16  by Plaintiffs do not provide an adequate basis for believing that
17  Defendants' statements regarding North Brawley were false.
18  Therefore, Plaintiffs must satisfy both requirements relating to
19  confidential witness statements.

20      Here, the confidential witness ("CW#1") was not an employee of
21  Ormat, but was instead "employed by a company contracted to lay

22

23      [3] Plaintiffs also allege that Defendants admitted that they
24  proceeded on a very aggressive schedule in order to receive a tax
   break if the project was completed by 2008.  We do not believe that
25  the statement about an aggressive schedule supports a claim of
   fraudulently misleading investors. Defendants' statements and actions
26  support a more compelling inference that Defendants expected and hoped
   to complete the North Brawley plant by 2008, but encountered problems
27  in the start-up phase that ended in delay and a disappointing
   capacity.

28                                  17

electrical conduit lines for the wells from February 2008 through September 2008" working as a "scheduler handling project-cost controls." (Am. Class Complaint ¶ 138 n. 3 (#35).) According to the complaint, CW#1 "left the company he was working for while the project was ongoing." Plaintiffs acknowledge that CW#1 was not involved with drilling or testing wells, but claim that he was familiar with the extent of the delays because "as an electrical contractor, the delays were a big deal for the contractor." According to Plaintiffs, CW#1 had incentive to track Ormat's "progress and slippage closely" because of the contract between CW#1's company and Ormat, which included terms for liquidated damages if the contractor missed certain milestones. Finally, Plaintiffs conclude that "by September 2008 Ormat had fallen increasingly behind on well drilling and construction, as CW#1 indicated that only approximately a third of the wells had been installed."

Plaintiffs claim that CW#1's account is independently corroborated by information available about wells drilled by third-party drilling companies. According to Plaintiffs, those records "indicate that Ormat faced significant problems with drilling in the summer of 2008, causing delays far beyond what is normal." Plaintiffs rely on the fact that three wells "took unusually long to complete." (Am. Class Compl. ¶ 139 (#35).)

We conclude that the confidential witness statements presented here "do not present a cogent and compelling inference of scienter." Digimarc, 552 F.3d at 999. CW#1 is not an employee of Ormat, nor does CW#1 allege to have had any direct contact with Ormat

18

management or any of the individual Defendants.  The most CW#1 can
hope to prove is that Ormat was not "on track."  Even that inference
is far from ironclad.  CW#1 left his company in September 2008, and
therefore cannot attest to whether Ormat managed to finish drilling
its wells and enter start-up in December 2008 as Ormat has claimed.
Nor do Plaintiffs present any sort of evidence corroborating their
claim that the alleged delays in drilling wells meant Ormat was
substantially and irreversibly behind on its construction schedule
in September 2008.  They merely assert that some available data
indicated that Ormat took a considerable amount of time drilling
three wells, but acknowledge that the usual time frame for well
drilling is sixteen days.  Plaintiffs fail to provide evidence
through CW#1 that Ormat intentionally lied when it announced that
construction was advanced or in its final stages.  Therefore, we
find that CW#1 satisfied neither prong of reliability required under
Digimarc and the PSLRA.

Plaintiffs have failed to provide evidence that supports an
inference that Defendants' statements concerning the North Brawley
plant were false or misleading, and that they were made with the
requisite scienter.  Therefore, Plaintiffs' claims based on Ormat's
statements that the construction was in its final stages, or other
such statements of current fact, must be dismissed.  Furthermore,
Ormat's forward-looking statements concerning the completion date
and capacity of the North Brawley plant are protected under the
PSLRA's safe harbor, and therefore cannot form the basis of a
securities fraud claim.

### IV. Conclusion

Plaintiffs' allegations based on the 2008 Restatement plead with sufficient particularity that Defendants' statements were intentionally or recklessly misleading, and shall not be dismissed. Plaintiffs' allegations based on Ormat's statements regarding the North Brawley plant, however, shall be dismissed. Ormat's statements that the North Brawley plant was expected to be completed by 2008 with a capacity of 50 MW were forward-looking statements protected by the PSLRA's safe harbor. Ormat's statements regarding the advanced stage of construction of the North Brawley plant at the end of 2008 are likewise insufficient to form the basis of a securities fraud claim because Plaintiffs have not provided compelling evidence that the statements were false or made with the requisite scienter.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' Motion to Dismiss (#43) is **GRANTED IN PART AND DENIED IN PART** on the following basis: Plaintiffs' allegations based on Ormat's statements regarding the North Brawley plant shall be dismissed, and Plaintiffs' allegations based on the 2008 Restatement shall not be dismissed.

DATED: March ____3____, 2011.

_Edward C. Reed_

UNITED STATES DISTRICT JUDGE